Kelly S. Crawford, Esq.
RIKER DANZIG LLP
7 Giralda Farms, Suite 250
Madison, NJ 07940-1051
(973) 538-0800

Attorneys for Defendant,
The Church of Jesus Christ of Latter-day Saints
   And
Temple  Corporation of the Church of
Jesus-Christ of Latter-day Saints

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN DOE R.J., | |
| | Civil Action No.:  1:26-CV-7097 |
| Plaintiff, | |
| v. | |
| THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS; TEMPLE CORPORATION OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS; THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS SOLDIER HILL NEW JERSEY STAKE; LAWRENCE W. SARDONI, JR., ABC, INC. 1-10 (fictitious entities); and DOES 1-10 (fictitious persons), | **NOTICE OF REMOVAL AND COPIES OF ALL PROCESS AND PLEADINGS IN STATE COURT** |
| Defendants. | |

TO:    Clerk of the Court
       Martin Luther King Building & U.S. Courthouse
       50 Walnut Street Room 4015
       Newark, NJ 07101

With Notice to:

Clerk of the Superior Court, Law Division
Superior Court of New Jersey, Passaic County
New Courthouse
77 Hamilton Street
Paterson, New Jersey 07505

Daniel R. Lapinski, Esq.
Alexandra A. Stulpin, Esq.
Jonathan Orent, Esq.
Carmen Scott, Esq.
Motley Rice New Jersey LLC
Woodland Falls Corporate Park
210 Lake Drive East, Suite 101
Cherry Hill, New Jersey 08002
*Attorneys for Plaintiff*

Pursuant to the provisions of 28 U.S.C. § 1441(a) and 28 U.S.C. § 1446, defendants The Church of Jesus Christ of Latter-day Saints ("The Church") and Temple Corporation of The Church of Jesus Christ of Latter-day Saints ("Temple Corporation") (collectively "The Church Defendants"), with the Consent of Defendant Lawrence Sardoni, Jr., file this Notice of Removal, removing this case from the Superior Court of New Jersey, Law Division, Passaic County, to the United States District Court for the District of New Jersey.  In support of this Notice, The Church Defendants state as follows:

## INTRODUCTION

1. On or about April 14, 2026, Plaintiff John Doe R.J., commenced this action by filing a Complaint in the Superior Court of New Jersey, Passaic County, bearing Case No. PAS-L-001331-26, against "The Church of Jesus Christ of Latter-day Saints," "Temple Corporation of the Church of Jesus Christ of Latter-day Saints," and "The Church of Jesus Christ of Latter-day Saints Solider Hill New Jersey Stake" ("Soldier Hill Stake").

2. The Church was created in 2019, when Corporation of the President of the Church of Jesus Christ of Latter-day Saints and Corporation of the Presiding Biship of The Church of Jesus

2

Christ of Latter-day Saints merged and were renamed as the single entity "The Church of Jesus Christ of Latter-day Saints."

3. The Church is a 501(c)(3) non-profit corporation with its principal place of business in Utah.

4. The Church is a Corporation Sole of the State of Utah.

5. Temple Corporation is incorporated in Utah as a 501(c)(3) nonprofit corporation.  The Temple Corporation's headquarters is in Salt Lake City, Utah.

6. "The Church of Jesus Christ of Latter-day Saints Soldier Hill New Jersey Stake" as named in the caption of the Complaint, is not a separate legal juridical entity from The Church. Stales and wards are ecclesiastical subunits of the Church.  The Soldier Hill Stake is not separately incorporated and has no legal existence and no assets apart from The Church.  It is not registered to do business in New Jersey or elsewhere.  It does not have a registered agent.  The Cherry Hill Stake has no mission or purpose distinct from the corporate Church.

7. Pursuant to 28 U.S.C. § 1446(a), a copy of the original Complaint filed in State Court is attached hereto as Exhibit A, along with the summonses issued to The Church and Temple Corporation, the filed Notice of Appearance of Alexandra Stulpin, Esq., the Track Assignment notice and the filed affidavits of service upon The Church, Temple Corporation and Sardoni.

8. The original complaint, captioned as <u>John Doe R.J. v. The Church of Jesus Christ Of Latter-Day Saints; Temple Corporation of The Church of Jesus Christ of Latter-Day Saints; The Church of Jesus Christ of Latter-Day Saints Soldier Hill New Jersey Stake; Lawrence W. Sardoni, Jr., ABC, Inc. 1-10 (Fictitious Entities); And Does 1-10 (Fictitious Persons)</u>, was filed in the Superior Court of the State of New Jersey, Law Division, Passaic County, Docket No. PAS-L-001331-26.

9. No previous application for removal has been made.

## NOTICE OF REMOVAL IS TIMELY

10. Plaintiff filed this action on April 14, 2026.

11. Defendants The Church and Temple Corporation were served with process on May 19, 2026.

12. This court has jurisdiction over this matter as there is complete diversity of citizenship between the parties.  As required by 28 U.S.C. § 1446(b), The Church Defendants file this Notice of Removal within thirty (30) days of service of the Complaint.  Accordingly, removal of this action is timely.

## DIVERSITY OF JURISDICTION EXISTS

13. This is a civil action that falls under the Court's original jurisdiction pursuant to 28 U.S.C. § 1332 (diversity of citizenship) and is one that may be removed to this Court based on diversity of citizenship under 28 U.S.C. §§ 1441 and 1446.

14. Defendant The Church is a Utah corporation sole with its principal place of business in Salt Lake City, Utah.

15. Temple Corporation is incorporated in Utah as a 501(c)(3) nonprofit corporation.  The Temple Corporation's headquarters is in Salt Lake City, Utah.

16. For purposes of determining diversity, a corporation is deemed to be a citizen of both the state of its incorporation and the state where it has its principal place of business.  See U.S.C. § 1332(c)(1).

17. Thus, pursuant to 28 U.S.C. § 1332(c)(1), The Church and Temple Corporation are citizens of the State of Utah.

18. Solider Hill Stake is not a juridical entity and thus resides nowhere separate from The

Church.

19. Defendant Lawrence W. Sardoni, Jr. is a resident of the State of California.

20. Plaintiff John Doe R.J. has not identified his state of residency, but lived in New Jersey at the time of the alleged incidents. See Exhibit A.

21. Upon information and belief, Plaintiff John Doe R.J. is not a current resident of Utah or California.

22. This Court has jurisdiction over this matter because complete diversity exists.  See 28 U.S.C. § 1332 and 1441.  As such, this case may be properly removed.

**AMOUNT IN CONTROVERSY IS SATISFIED**

23. The amount in controversy in this case exceeds $75,000.00, exclusive of interest and cost, under the "reasonable probability" standard recognized by this Court. Section 1446(c)(2)(B) instructs that "removal . . . is proper on the basis of an amount of controversy asserted" by the defendant "if the district courts find, by the preponderance of the evidence, that the amount in controversy exceeds" the jurisdictional threshold.  The preponderance of the evidence standard is satisfied by "proof to a reasonable probability."  Roundtree v. Primeflight Aviation Service, Inc., No. 16-9609, 2017 WL 3207439, at *2 (D.N.J. July 28, 2017) (citations and quotations omitted).

24. This Court first looks to the complaint to assess the damages demanded by the plaintiff. Russ v. Unum Life Ins. Co., 442 F. Supp. 2d 193, 197 (D.N.J. 2006) (citing Angus v. Shiley, Inc., 989 F.2d 142, 145 (3d Cir. 1993)).  When the complaint does not allege a specific amount of damages, the court should conduct an independent appraisal of the value of the claim by looking at the notice for removal and any other relevant evidence.  Penn v. Wal–Mart Stores, Inc., 116 F. Supp. 2d 557, 561 (D.N.J. 2000) (citations and quotations omitted). The amount in controversy is determined "not . . . by the low end of an open-ended claim, but rather by a reasonable reading of

the value of rights being litigated." Werwinski v. Ford Motor Co., 286 F.3d 661, 666 (3d Cir. 2002) (citations omitted).

25. It is apparent from the face of the Complaint that Plaintiff seeks recovery of an amount beyond $75,000.00, exclusive of costs and interest. Plaintiff claims that he "was caused to suffer emotion and physical injuries, including but not limited to, depression, anxiety, embarrassment, and humiliation, and has incurred and will likely incur in the future, substantial expenses for medical and psychological treatment." (Compl. ¶ 117).

26. Nowhere in the Complaint does Plaintiff limit the amount in controversy to less than $75,000.00.  (See Compl.).  Plaintiff also seeks punitive damages. (Compl. ¶¶ 118-123).

27. New Jersey district courts have recognized that the amount in controversy exceeded $75,000.00 in cases with similar personal injury allegations to those made here. See, e.g., Fields v. Zubkov, No. 08-2016, 2008 WL 4447098, at *4 (D.N.J. Sept. 26, 2008) ("[M]ost removed personal injury cases will likely remain in federal court even if they involve a very minor injury—unless the plaintiff limits her damages below the jurisdictional limit."); Dugan v. Acme Mkts., Inc., No. 15-5267, 2016 WL 266350, at *3 (D.N.J. Jan. 20, 2016) (denying Plaintiff's motion to remand because general allegations of "severe and painful bodily injuries" were enough to establish the amount in controversy); Raspa v. Home Depot, 533 F. Supp. 2d 514, 522 (D.N.J. 2007) (holding that claims for punitive damages met the amount in controversy requirement because plaintiffs, under New Jersey law, can collect up to five times their compensatory damages); Avant v. J.C. Penney, No. 07-1997, 2007 WL 1791621, at *2 (D.N.J. June 19, 2007) ("[T]his Court generally will not remand a personal injury claim in the absence of a waiver by Plaintiff capping the damages at $75,000.").

28. The Removing Defendant need not confirm through discovery that the jurisdictional

6

amount is satisfied.  Indeed, the "jurisdictional analysis is performed on what is <u>alleged</u> in the Complaint, not what one may ultimately recover." <u>Allen v. Bloomingdale's, Inc.</u>, No. 16-772, 2016 WL 4579975, at *2 (D.N.J. July 19, 2016).  Thus, courts often extrapolate the jurisdictional amount from plaintiff's general allegations.  <u>See, e.g.</u>, <u>Raspa</u>, 533 F. Supp. 2d at 522 (holding that compensatory and punitive damages for "severe and permanent physical, psychological and emotional injuries," "great pain," "substantial medical expenses" and "lost wages" supported a finding that the amount in controversy was satisfied). Because Plaintiff's Complaint sets forth general personal injury allegations in addition to a claim for punitive damages, there is a reasonable probability that the amount in controversy is satisfied.

29. As demonstrated above, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.00, and the action is between citizens of different states.

30. Accordingly, The Church Defendants respectfully remove this action from the New Jersey Superior Court, Passaic County, bearing Case No. PAS-L-001331-26, to this Court under 28 U.S.C. §§ 1332(a) and 1441(b).

<strong><u>COPIES OF ALL PLEADINGS</u></strong>

31. As noted, the Complaint and all documents filed on the docket in the Superior Court, Passaic County are attached hereto as Exhibit A, along with the summonses issued to The Church and Temple Corporation.

32. The foregoing represents all of the process, pleadings, orders and other papers or exhibits filed in the State Court.

<strong><u>FILING OF REMOVAL PAPERS</u></strong>

33. Pursuant to 28 U.S.C. § 1446(d), The Church is filing a written Notice of the Filing of

7

Removal with the Clerk of the Superior Court of New Jersey Law Division, Passaic County, along with a copy of the Notice of Removal. These papers are being served upon Plaintiff's counsel as required by 28 U.S.C. § 1446(d).

WHEREFORE, The Church Defendants give notice that the matter captioned <u>John Doe R.J. v. The Church Of Jesus Christ Of Latter-Day Saints; Temple Corporation Of The Church Of Jesus Christ Of Latter-Day Saints; The Church Of Jesus Christ Of Latter-Day Saints Soldier Hill New Jersey Stake; Lawrence W. Sardoni, Jr., ABC, Inc. 1-10 (Fictitious Entities); And Does 1-10 (Fictitious Persons)</u> in the Superior Court of the State of New Jersey, Law Division, Passaic County, Docket No. PAS-L-001331-26, is removed to the United States District Court for the District of New Jersey, and request that this Court retain jurisdiction for all further proceedings.

Dated: June 15, 2026                                Respectfully submitted,

*/s/ Kelly S. Crawford*
Kelly S. Crawford
Riker Danzig LLP
7 Giralda Farms, Suite 250
Madison, NJ 07940-1051
(971) 538-0800
kcrawford@riker.com
*Attorneys for Defendants*
*The Church of Jesus Christ of Latter-day Saints and*
*Temple Corporation of the Church of Jesus Christ*
*of Latter-day Saints*

CONSENTED TO AS TO FORM AND ENTRY:

*/s/ Samantha C. Fasanello*
Samantha C. Fasanello, Esq.
Mandelbaum Barrett PC
3 Becker Farm Road, Suite 105
Roseland, NJ 07068
(973) 974-9828
sfasanello@mblawfirm.com

*Attorneys for Defendant,*
*Lawrence W. Sardoni, Jr.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2026, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system.  A copy of the foregoing was also served via email and

United States Postal Service, postage pre-paid, on the following counsel:

>   Daniel R. Lapinski, Esq.
>   Alexandra A. Stulpin, Esq.
>   Jonathan Orent, Esq.
>   Carmen Scott, Esq.
>   Motley Rice New Jersey LLC
>   Woodland Falls Corporate Park
>   210 Lake Drive East, Suite 101
>   Cherry Hill, New Jersey 08002
>
>   *Attorneys for Plaintiff*

Dated: June 15, 2026

>   */s/ Kelly S. Crawford*
>   Kelly S. Crawford

4907-9859-5236, v. 2

# Exhibit A

**MOTLEY RICE NEW JERSEY LLC**
BY:   Daniel R. Lapinski, Esquire (Attorney ID: 004612001)
       dlapinski@motleyrice.com
       Alexandra A. Stulpin, Esquire (Attorney ID: 163562015)
       astulpin@motleyrice.com
       Jonathan Orent, Esquire (*pro hac vice forthcoming*)
       jorent@motleyrice.com
       Carmen Scott, Esquire (*pro hac vice forthcoming*)
       cscott@motleyrice.com
Woodland Falls Corporate Park
210 Lake Drive East, Suite 101
Cherry Hill, New Jersey 08002
Telephone: 856-382-4670
Facsimile:  856-667-5133
*Attorneys for Plaintiff*

---

| | |
|---|---|
| JOHN DOE R.J. (fictitious name), | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: PASSAIC COUNTY |
| Plaintiff, | DOCKET NO.: _____ |
| v. | |
| THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS; TEMPLE CORPORATION OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS; THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS SOLDIER HILL NEW JERSEY STAKE; LAWRENCE W. SARDONI, JR., ABC, INC. 1-10 (fictious entities); and DOES 1-10 (fictitious persons), | CIVIL ACTION

COMPLAINT AND JURY DEMAND |
| Defendants. | |

---

Plaintiff John Doe R.J., by and through his attorneys, MOTLEY RICE NEW JERSEY

LLC, as and for his Complaint in this matter against Defendants THE CHURCH OF JESUS

CHRIST OF LATTER-DAY SAINTS, TEMPLE CORPORATION OF THE CHURCH OF

JESUS CHRIST OF LATTER-DAY SAINTS; THE CHURCH OF JESUS CHRIST OF

1

LATTER-DAY SAINTS, SOLDIER HILL NEW JERSEY STAKE, LAWRENCE W. SARDONI, JR., ABC, INC 1-10, and DOES 1-10, states and alleges as follows:

## **PARTIES**

1.	Plaintiff John Doe R.J. is an adult man whose name or address is not contained in this Complaint so as to protect his privacy and identity as he incurred injuries and damages of a sensitive nature as a result of the intentional and negligent acts and failures of Defendants outlined below. Information which would or could identify John Doe R.J. is not contained herein. Plaintiff may be contacted through his counsel as outlined herein.

2.	There exists good cause for Plaintiff to use a pseudonym due to the harmful effect of the public disclosure of his identity and the harm inflicted by Defendants to John Doe R.J., Plaintiff's undersigned counsel will provide the identity of Plaintiff to all Defendants. As such, Defendants suffer no prejudice as a result of concealing Plaintiff's identity in the Complaint and Verification.

3.	Defendant, The Church of Jesus Christ of Latter-day Saints', principal place of business is located at 50 East North Temple, Floor 20, Salt Lake City, Utah 84150. The presiding Bishop serves at the pleasure of and subject to the direct and absolute control of The Church of Jesus Christ of Latter-day Saints. The divisions of the Church are the wards, stakes, and areas.

4.	The Church of Jesus Christ of Latter-day Saints, at all relevant times herein mentioned, does business and conducts continuous and systematic activities in the State of New Jersey.  The Church of Jesus Christ of Latter-day Saints is independently liable for its own conduct alleged herein, is liable as a successor in interest to another entity, and/or is an alter ego of defendants.

5.	Defendant, The Temple Corporation of The Church of Jesus Christ of Latter-day Saints is, and was at all relevant times herein mentioned, a religious entity and subsidiary of

Defendant, The Church of Jesus Christ of Latter-day Saints. The Temple Corporation of The Church of Jesus Christ of Latter-day Saints is a corporation duly organized and operating pursuant to the laws of Utah with its principal place of business located at 50 East North Temple, Floor 20, Salt Lake City, Utah 84150.

6.      The Temple Corporation of The Church of Jesus Christ of Latter-day Saints operates, maintains, and manages The Church of Jesus Christ and Latter-day Saints' properties at the direction and under the control of The Church of Jesus Christ of Latter-day Saints and, at all times relevant herein mentioned, does business and conducts continuous and systematic activities in New Jersey. The Temple Corporation of The Church of Jesus Christ of Latter-day Saints is independently liable for its own conduct alleged herein, is liable as a successor in interest to another entity, and/or is an alter ego of defendants.

7.      Defendant, The Church of Jesus Christ of Latter-day Saints, Soldier Hill New Jersey Stake (hereinafter "Soldier Hill Stake"), is and was at all relevant times herein mentioned, the religious entity located at 840 Soldier Hill Road, Emerson, New Jersey, 07630, through which the perpetrator held and used his position as a "Branch President" to groom and sexually abuse John Doe R.J.

8.      Defendant, Soldier Hill Stake, is and was at all relevant times herein, a religious entity and subsidiary of Defendants, The Church of Jesus Christ of Latter-day Saints and The Temple Corporation of The Church of Jesus Christ of Latter-day Saints. Defendant, Solider Hill Stake, does business with and conducts systemic activities in New Jersey. Defendant, Soldier Hill Stake, operates, maintains, and manages one of the Paterson, New Jersey congregations of The Church of Jesus Christ of Latter-day Saints at the direction and under the control of The Church of Jesus Christ of Latter-day Saints. Defendant, Soldier Hill Stake, reports directly to The Church of Jesus Christ of Latter-day Saints. Defendant, Soldier Hill Stake, is independently liable for its

3

own conduct as alleged herein, is liable as a successor in interest to another entity and/or is an alter ego of Defendants.

9.     Defendants The Church of Jesus Christ of Latter-day Saints, The Temple Corporation of The Church of Jesus Christ of Latter-day Saints, and The Church of Jesus Christ of Latter-day Saints, Soldier Hill Stake are herein collectively referred to as "LDS" or the "Church".

10.     Defendant Lawrence W. Sardoni, Jr., is an adult individual currently residing at 10467 Ring Avenue, Alta Loma, California, 91737.

11.     Defendants, ABC Inc. 1-10, and DOES 1-10 are as yet unidentified individuals and entities that engaged "Branch President" Lawrence W. Sardoni, Jr., who was the perpetrator of Plaintiff's profound and prolonged sexual abuse.

12.     At all times material, Sardoni remained under the direct supervision, employ and control of the Defendants.  Defendants placed Sardoni in positions where he had access to and worked in close proximity with children as an integral part of his work.

13.     Defendant ABC Inc. 1 through 10, are fictitious entities that own, operate, control, manage, or do business as part of the Soldier Hill Stake and/or employed, supervised, controlled and/or oversaw Lawrence Sardoni and/or which otherwise owed a legal duty to Plaintiff to prevent the repeated incidents of sexual abuse at LDS locations as is more fully alleged herein.

14.     Defendant DOES 1 through 10, are fictitious entities that own, operate, control, manage, or do business as part of the Soldier Hill Stake and/or employed, supervised, controlled and/or oversaw Lawrence Sardoni and/or which otherwise owed a legal duty to Plaintiff to prevent the repeated incidents of sexual abuse at LDS locations as is more fully alleged herein.

4

**JURISDICTION AND VENUE**

15. This Court has jurisdiction over this matter because the Soldier Hill Stake is a New Jersey entity with their principal place of business in New Jersey, and because the unlawful conduct complained of herein occurred in New Jersey.

16. Venue is proper in Passaic County pursuant to N.J. Rule 4:3-2(a)(3), as Passaic County is the county in which Defendant Soldier Hill Stake resides. In addition, events that are relevant to this action occurred within this County.

**INTRODUCTION**

17. This lawsuit is about the abject failure of Defendants to protect Plaintiff from harm and the blatant failure of Defendants' employees and agents to report known and/or suspected child sexual abuse that was being or had been committed by one of their "Branch Presidents," of which they knew or should have known was occurring and/or had occurred.

18. Defendants each assumed responsibility for the wellbeing of their members, whether as congregants, clergy or volunteers appointed by the Church of Jesus Christ and Latter-day Saints. In their capacities as Bishop, and other positions such as Stake President, Relief Society President, Missionaries, Sunday School and Primary Teacher, High Council Member, and Elder; Defendants and their agents placed individuals in positions of responsibility and authority over Church members.

19. As a result of the positions of responsibility and authority, Defendants had a special relationship with members of the congregation, including the then-minor Plaintiff. This relationship gave rise to a duty to protect members of the congregation, including the then-minor Plaintiff, from a foreseeable risk of harm.

5

20.     At all relevant times, Defendants assumed special responsibilities for its members, including having a disciplinary and red flagging system meant to identify and track sexual predators and other dangerous individuals within the membership.

21.     Defendants' income is derived from member tithes which are turned over to Defendant Temple Corporation of the Church of Jesus Christ of Latter-day Saints for investment and other uses, including support of the administrative expenditures of the Defendants' wards, stakes, and areas.

22.     Defendant Temple Corporation of the Church of Jesus Christ of Latter-day Saints does not provide information about Defendants' finances to their members of the public. Upon information and belief, Defendants receive more than seven (7) billion dollars a year in tithing from members. Based upon publicly reported information, Defendants maintain financial assets and real estate in excess of two hundred (200) billion dollars.

23.     Plaintiff is informed and believes and thereupon alleges that, at all times mentioned herein, Defendants were the agents, servants, employees, successors-in-interest and/or joint venturers of their co-Defendants and were, as such, acting within the purpose, course, scope and authority of said agency, employment, successor-in-interest and/or joint venture and that each and every Defendant as aforesaid was acting as principal and was negligent in the selection and hiring and retention of every Defendant as an agent, employee, successor-in-interest and/or joint venture.

24.     All of the acts, conduct, and nonfeasance herein carried out by each and every representative, employee, or agent of each and every corporate business Defendant, was authorized, ordered, and directed by their respective Defendant's corporate or business employers, officers, directors and/or managing agents; that in addition thereto, said corporate or business employers, officers, directors and/or managing agents had advance knowledge of, authorized and participated in the herein described acts, conduct and nonfeasance of their representatives,

6

employees, agents, and each of them; and that in addition thereto, upon the completion of foresaid acts, conduct and nonfeasance of the employees and agents, the aforesaid corporate and business employers, officers, directors, and/or managing agents, respectively ratified, accepted the benefits of, condoned and approved of each and all said acts, conduct, or nonfeasance of their co-employees, and agents.

25. As stated herein and at all times relevant, Defendants, each of them, knew or had reason to know, or were otherwise on notice of the misconduct alleged herein, which created the risk of childhood sexual assault by an employee, volunteer, representative, or agent, and Defendants failed to take reasonable steps or to implement reasonable safeguards to avoid or prevent acts of childhood sexual assault. Providing or requiring counseling is not sufficient, in and of itself, to constitute a reasonable step or reasonable safeguard.

26. The perpetrator, Lawrence Sardoni, was an employee, agent, servant, member, and/or volunteer of Defendants when he sexually assaulted the Plaintiff—then a teenage minor.

27. The perpetrator, Lawrence Sardoni, was a member of Defendant, The Church of Jesus Christ of Latter-day Saints, "Branch President," and affiliated with the Soldier Hill Stake and Paterson Ward of LDS.

28. During the period of childhood sexual assault and/or abuse of Plaintiff, Defendants supervised and exercised control over the perpetrator, Lawrence Sardoni.

29. Each Defendant is responsible, in some manner, for the events and happenings herein referred to, thereby legally causing the injuries and damages to Plaintiff as hereinafter alleged.

30. Each Defendants' continued failure to act allowed the perpetrator to continue his manipulation and sexual abuse of Plaintiff, resulting in severe and permanent injuries to Plaintiff.

7

31.     Except as otherwise noted, a reference to "Defendants" in this Complaint shall include all Defendants in the above-captioned Complaint.

## FACTUAL ALLEGATIONS
### (Common to All Causes of Action)

32.     The Church of Jesus Christ of Latter-day Saints is led by the President, also known as the Prophet, who selects two others as counselors to assist him in his functions overseeing the Church. The President and his Counselors function as the First Presidency, which is the highest governing body of the Church.[1]

33.     The Quorum of the Twelve Apostles is the second-highest governing body of the Church. The apostles are regarded by Church members as "special witnesses" of Jesus Christ throughout the world. They travel frequently, addressing congregations of members and meeting with, advising, and managing local leadership.

34.     Together, the First Presidency and the Quorum of the Twelve Apostles declare and establish policy, and oversee the entire Church, including every Stake and Ward in New Jersey.[2]

35.     The Quorum of the Seventy exists to assist the Quorum of the Twelve Apostles in the overseeing, directing, and managing local leadership and they serve in locations throughout the world. There are currently twelve Quorums of the Seventy, each assigned to a designated geographical location called an Area. Members of the Quorum of the Seventy live and work within the Area they serve, including New Jersey, and report directly to the Twelve Apostles.

36.     Each Area that a Quorum of the Seventy oversees is comprised of Stakes and within each Stake are Wards. The Stakes are directed and controlled by a Stake President, who acts under the direction of the Quorum of Seventy in his Area. Stake Presidents, acting with approval of the

---

[1] https://www.churchofjesuschrist.org/learn/global-leadership-of-the-church?lang=eng

[2] The Church of Jesus Christ of Latter-Day Saints Gen. Handbook, Ch. 5 § 5.1.1.1 at 26 (Aug. 2023)

First Presidency, can call a member to become Bishop.[3]  In New Jersey, there is estimated to be six stakes.

37.     Bishops, appointed and overseen by the Stake President, are responsible for the spiritual development of the Ward's members, focusing on the rising generation of children.[4] Bishops are responsible for the Wards finances and record keeping.

38.     Each Stake President calls upon 12 high priests to form the Stake High Council.[5] If an elder is called to serve on the high council, he is ordained a high priest before he is set apart. Under the direction of the stake presidency, high councilors help with God's work of salvation and exaltation in the stake.

## EPIDEMIC OF SEXUAL ABUSE IN THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS

39.     Defendants knew or should have known or reasonably suspected the abuse which was perpetuated by one of their agents.

40.     Each Stake creates and maintains meticulous sets of membership records which are reviewed and controlled by the Church of Jesus Christ of Latter-day Saints. Membership records are the Church of Jesus Christ of Latter-day Saints' way of tracking its members. Members are not allowed to access their records and must receive approval to view them under the supervision of the Bishop. These records include names, addresses, callings, and temple recommendations. The records also contain additional membership information such as new members, members in military service, members who are adopted, children who are born of wedlock, and records of

---

[3] The Church of Jesus Christ of Latter-Day Saints Gen. Handbook, Ch. 6 § 6.2.1.5 at 33 (Aug. 2023)

[4] The Church of Jesus Christ of Latter-Day Saints Gen. Handbook, Gen. Handbook, Ch. 7 § 7.1 at 45 (Aug. 2023)

[5] Doctrine and Covenants 102:1; 124:131

9

children of divorced parents. Records are created by local Bishops, approved by the Stake President, and ultimately transmitted to the Church of Jesus Christ of Latter-day Saints.

41.     Records with "annotations" are also maintained by Defendants. Annotations are made where a member's conduct has threatened the well-being of other persons or of the Church as a whole. Annotations are made when a member is disciplined by the Bishop or Stake President for "incest, sexual offense against or serious physical child abuse, plural marriage, an elective transexual operation, repeated homosexual activities (by adults), or embezzlement of church funds." All annotations placed on a member's record are approved by the First Presidency.

42.     Defendants maintain a pattern and practice of concealing abuse from authorities, and signals that its members should conceal and/or fail to report abuse so as to keep "the Church from being inappropriately implicated in legal matters."[6] Through this policy of concealment, the Defendants ratify abusive conduct, perpetuating a culture of concealment and encouraging a lack of cooperation among Church members with law enforcement.

43.     The Stake President and Bishops handbook states as follows: "[i]in instances of abuse, the first responsibility of the Church is to assist those who have been abused, and to protect those who may be vulnerable to future abuse."

44.     In 1995, Defendants created a 1-800 Help Line to report abuse, but it is only available to ecclesiastical leaders. Utah's Supreme Court characterized the Help Line as "a 1-800 number that bishops and other Church clergy can call when they become aware of possible abuse. The Help Line is available 24 hours a day, 365 days a year and is staffed by legal and counseling professionals who 'provide guidance to the bishop on how to protect the [victim] from further

---

[6] *See*, President Russell M. Nelson Letter (August 4, 2020); *see also,* FOX 13 Investigates: LDS Church urges leaders to not participate in 'any type of court case'

abuse, and how to deal with the complex emotional, psychological, and legal issues that must be addressed in order to protect the victim."[7]

45.     In reality, the Church of Jesus Christ of Latter-day Saints primarily staffs the Help Line with attorneys. Rather than notifying law enforcement or other government authorities when Bishops or other Church clergy members call the Help Line regarding sexual abuse within the Church, Help Line operators transfer these calls to attorneys, who regularly advise the Bishops not to report the abuse incident to law enforcement, misrepresenting clergy-penitent privilege laws as their reasoning.

46.     Defendants' policies and protocols further direct teachers and other mandated reporters who suspect a minor may report abuse to them to encourage the minor to instead speak with a Bishop or Stake President and thus circumvent their duty to disclose and report abuse.

47.     In another sexual abuse related civil lawsuit against the Church and its agents, attorneys "acknowledged during a pretrial deposition that the firm uses information gleaned from helpline calls to identify cases that pose a high financial risk to the [] Church."[8]

48.     In other words, the Church of Jesus Christ of Latter-day Saints implements the Help Line not for the protection and spiritual counseling of sexual abuse victims, as professed in Church doctrine and literature, but for attorneys to snuff out complaints and protect the Church of Jesus Christ of Latter-day Saints and its wards from potentially costly lawsuits. This is consistent with the instructions set forth in President Russell M. Nelson's Letter, dated August 4, 2020, encouraging congregants to avoid cooperating with authorities asking for information on abuse.[9]

---

[7] *See*, *MacGregor v. Walker,* 322 P.3d 706, 707 (2014).
[8] https://www.vice.com/en/article/duty-to-report-the-mormon-church-has-been-accused-of-using-a-victims-hotline-to-hide-sexual-abuse-claims/
[9] *See*, FN 6.

49.     Defendants' actions embody a culture that protects sexual predators, rather than innocent and vulnerable children. Defendants handled the repeated allegations internally as "a matter of sin" and not one leader reported any matter to police. Instead, Defendants, their bishops, and personnel, allow predators like Lawrence Sardoni to continue his predatory conduct completely unhindered and protected, and in such action taken against John Doe R.J.'s innocence and vulnerabilities, were careless, reckless, negligent, and consciously disregarded a minor's rights, as more fully described herein.

50.     Defendants also provide direct access to a large youth community wherein a danger to the community, like Lawrence Sardoni, wielded power over John Doe R.J.

### PLAINTIFF JOHN DOE R.J.

51.     On or around 1998, Plaintiff John Doe R.J. was visited at his home in Paterson, NJ by LDS Elders[10] in order to recruit his family to attend Church services at the local Paterson, New Jersey ward, which is part of the Soldier Hill Stake; Plaintiff was thirteen years old at the time.

52.     At Plaintiff's first Church service, Sardoni introduced himself to Plaintiff and Plaintiff's mother as the "Branch President."

53.     Sardoni immediately showed an inappropriate interest in Plaintiff and convinced him to continue attending Church services without his mother, assuring Plaintiff's mother Plaintiff would be "fine."

54.     At the time, Plaintiff was not a citizen of the United States and was in the process of obtaining his green card. His immigration status made him more vulnerable to Sardoni's inappropriate advances and grooming tactics.

---

[10] Upon information and belief, Plaintiff believes the Elders were named "White" and "Lincoln" but is not aware of the proper spelling of their respective names.

55.    At church services, Plaintiff was introduced to peers John Doe J and John Doe M, who accompanied him to various youth events at the Soldier Hill Stake wards.

56.    Sardoni began manipulating and grooming Plaintiff by showing him special attention, buying him gifts, and chauffeuring him in his car.

57.    Sardoni escalated the grooming of Plaintiff and began inviting Plaintiff to his home when Sardoni's wife and older children were not present.

58.    One evening, when Plaintiff was sitting on the couch in Sardoni's living room, Sardoni told Plaintiff he would have his own children "kiss him on the mouth" to "detect whether they had been smoking" cigarettes.

59.    Sardoni, without warning, proceeded to forcibly kiss Plaintiff on the mouth; Plaintiff was a middle school student at the time.

60.    It was the first nonconsensual sexual contact between Sardoni and Plaintiff, but it was far from the last occurrence.

61.    The sexual abuse escalated as Sardoni began touching Plaintiff's genitalia, either at Sardoni's home or in Sardoni's car, and fondling Plaintiff's penis over his clothes while Sardoni drove.

62.    Eventually, Sardoni began performing oral sex on Plaintiff, up to the point of orgasm and ejaculation.

63.    After Sardoni began performing oral sex on Plaintiff, Sardoni approached Plaintiff's mother and offered to pay for Plaintiff's tuition at the private Paterson Catholic High School,[11] and to help Plaintiff obtain a green card, saying that Plaintiff was "special."

64.    Plaintiff's mother agreed to let Sardoni pay for Plaintiff's private Catholic school tuition at Paterson Catholic High School.

---

[11] Paterson Catholic High School was closed by the Roman Catholic Archdiocese in 2010.

65. While Plaintiff was attending Paterson Catholic High School, Sardoni began to sexually abuse him more frequently, performing oral sex on Plaintiff multiple times a month. Plaintiff estimates Sardoni performed oral sex on him in excess of fifty (50) times over a period of two years.

66. Plaintiff did not want to kiss Sardoni, but sometimes Sardoni would forcibly kiss him, saying "Well I don't always want to do the things I do for you" and that the kissing "felt good" to Sardoni because he could no longer achieve an erection after a medical illness.

67. If Plaintiff resisted Sardoni's sexual assaults, Sardoni would threaten him by saying his son was a lawyer in another state and his son would have Plaintiff's immigration status compromised.

68. While Plaintiff was attending Paterson Catholic High School, and the sexual abuse was ongoing, Sardoni approached Plaintiff's mother to have the minor-Plaintiff move into Sardoni's home so Sardoni could start "adoption proceedings" so Plaintiff could officially have his immigration status formalized.

69. Plaintiff never moved in with Sardoni.

70. Sardoni was instead investigated by local law enforcement for inappropriate sexual contact with minors, namely Plaintiff and John Doe J and John Doe M, prior to any move into Sardoni's home occurring.

71. Plaintiff was unaware of what, if anything, came from law enforcement's investigation into Sardoni as Plaintiff and his mother moved.

72. Upon information and belief, Sardoni moved to the west coast following the commencement of the law enforcement investigation.

73. Upon information and belief, Defendants did not investigate any of the allegations against Sardoni following the criminal investigation.

14

74.     Plaintiff is informed, believes, and thereupon alleges that other LDS staff, employees, volunteers, leaders, and officers knew or should have known that Sardoni was isolating and taking minor children, including Plaintiff, to commit inappropriate behaviors and sexually abusive conduct with minor children.

75.     Prior to, during, and after Sardoni's repeated sexual assaults and/or sexual abuse of Plaintiff, Defendants, through their agents, representatives, servants, employees, and/or volunteers knew or should have known, reasonably suspected, and/or were otherwise on notice, that the "Branch President" Sardoni's conduct and relationship with young children, including Plaintiff, was inappropriate, unlawful, wrongful, and/or otherwise created a risk of childhood sexual assault.

76.     Further, Defendants' failure and/or refusal to report the sexual assault and/or sexual abuse of Plaintiff to their Elders, Bishops, employees, and/or agents created a foreseeable risk of continued sexual assault and/or abuse of Plaintiff by Sardoni.

77.     Plaintiff is informed and believes, and on that basis alleges, that such actions were motivated by a desire to protect the reputation of Defendants and protect the monetary support of Defendants, while fostering an environment where such sexual assault could continue to occur.

78.     As a result of the above-described conduct, Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life; was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling. As a result of the abuse at the hands of the "Branch President" Sardoni, Plaintiff will never be the same.

15

79.     As a direct and proximate result of the sexual abuse by the "Branch President" Sardoni, Plaintiff suffered physical and emotional injuries, as more fully set forth in this Complaint. As a result of the abuse by Sardoni, Plaintiff was severely mentally, psychologically, and emotionally damaged. Plaintiff sustained severe psychological and emotional distress. Plaintiff struggled and continues to struggle in his relationships with her family, peers and others.

80.     Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, anxiety, depression, sexual identity confusion, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life.

81.     Defendants, through their agents, knew or should have known in the exercise of reasonable care and supervision that Sardoni was engaging in the abuse of Plaintiff described above and should have intervened to either prevent the abuse, prevent his access to children, or excommunicate him.

82.     All of the above physical, psychological, and emotional injuries were proximately caused by the negligence, carelessness, recklessness, and other tortious and outrageous conduct of Defendants as set forth in this Complaint. Plaintiff's injuries were caused solely by the negligence of Defendants as set forth more fully herein and were not caused or contributed thereto by any negligence on the part of Plaintiff.

### COUNT 1: NEGLIGENCE
**(As to All Defendants)**

83.     Plaintiff incorporates all paragraphs of the Complaint as if fully set forth herein.

84.     Defendants are persons or entities who owed a duty of care to Plaintiff and/or to Plaintiff's parents or had a duty to control the conduct of the perpetrator by way of the special relationship existing between those individuals.

16

85. At all relevant times, Defendants had a duty to protect and safeguard Plaintiff from hurt, harm and danger while under the supervision of Sardoni.

86. At all relevant times, Defendants had a duty to ensure that its employees, volunteers, representatives or agents were not sexually abusing their minor congregants.

87. At all relevant times, Defendants had a duty to provide for Plaintiff's basic human needs, including the safety of her person.

88. The negligent, reckless, intentional, outrageous, deliberately and recklessly indifferent and unlawful conduct of Defendants as set forth above and herein, consisted of among other things:

   a. permitting "Branch President" Sardoni to sexually abuse minor Plaintiff;

   b. failing to utilize processes that screen out and/or prevent the employ of predators such as "Branch President" Sardoni;

   c. permitting "Branch President" Sardoni to engage in illegal sexual conduct with a minor;

   d. failing to properly and adequately supervise and discipline its employees, volunteers, representatives or agents to prevent the sexual abuse that occurred to Plaintiff;

   e. failing to adopt, enforce and/or follow adequate policies and procedures for the protection and reasonable supervision of children and students of the Soldier Hill Stake, including Plaintiff, and, in the alternative, failing to implement and comply with such procedures which had been adopted;

17

f.   failing to implement, enforce and/or follow adequate protective and supervisory measures for the protection of minor congregants at the Soldier Hill Stake, including Plaintiff;

g.   creating an environment that facilitated sexual abuse by "Branch President" Sardoni against Plaintiff;

h.   failing to adopt, enforce and/or follow policies and procedures to protect minors against harmful influence and contact by its employees, volunteers, representatives or agents like "Branch President" Sardoni;

i.   failing to warn Plaintiff and his parent(s) of the risk of harm posed by "Branch President" Sardoni after Defendants knew or should have known of such risk;

j.   failing to provide Plaintiff with appropriate assistance in coping with the injuries sustained;

k.   violation of duties imposed by Restatement (Second) of Agency § 213 and Restatement (Second) of Torts § 317, as adopted in New Jersey;

l.   failing to warn Plaintiff of the risk of harm Plaintiff may suffer as a result of further contact with "Branch President" Sardoni;

m.   failing to warn or otherwise make reasonably safe the property which Defendants possessed and/or controlled, leading to the harm of Plaintiff;

n.   failing to adopt/implement and/or enforce policies and procedures for the reporting to law enforcement, New Jersey Department of Child Protection and Permanency, authorities within Soldier Hill Stake and/or other authorities of harmful acts to children;

o. failing to report "Branch President" Sardoni's harmful acts to authorities within the Soldier Hill Stake and/or other authorities;

p. violating its own policies and/or by-laws regarding child sexual abuse and/or harassment by employees, volunteers, representatives or agents like "Branch President" Sardoni;

q. ignoring, concealing, or otherwise mitigating the seriousness of the known danger that "Branch President" Sardoni posed;

r. failing to prevent the sexual abuse that was committed by "Branch President" Sardoni on Plaintiff;

s. allowing "Branch President" Sardoni to remain a congregant of the Church after knowing that he sexually abused a minor;

t. failing to properly supervise and/or discipline its employees, volunteers, representatives or agents;

u. failing to adequately and properly train its employees regarding child sexual abuse of students by employees, volunteers, representatives or agents;

v. negligently managing and/or operating the Soldier Hill Stake;

w. failing to investigate "Branch President" Sardoni background and/or information it knew or should have known during the course of his employment, including that he was a predator sexually abusing males.

89.     As a proximate and direct result of Defendants' negligence and/or reckless conduct described herein, Plaintiff was harmed and has sustained physical and emotional injuries,

19

embarrassment, mental anguish, pain and suffering and loss of enjoyment of life and life's pleasures.

90.     Plaintiff has been and will likely, into the future, be caused to incur medical expenses and Plaintiff may likely incur a loss of earning capacity in the future.

91.     Defendants knew or should have known about the severe risk of their failure to take any appropriate precautions outlined above and acted with a reckless disregard for such risk for which Plaintiff is entitled to and hereby seeks punitive damages pursuant to the requirements of Rhode Island law.

92.     Defendants' actions and failures as described herein are outrageous and were done recklessly with a conscious disregard of the risk of harm to Plaintiff for which he is entitled to and hereby seeks punitive damages.

WHEREFORE, Plaintiff, in his own right, demands judgment against Defendants jointly and severally with all other defendants and individually and collectively for damages, interest, cost of suit, punitive damages and such other remedies as this Honorable Court deems equitable, just and proper.

## COUNT II: VICARIOUS LIABILITY
### (As to All Defendants)

93.     Plaintiff incorporates all paragraphs of the Complaint as if fully set forth herein.

94.     "Branch President" Sardoni engaged in unpermitted, harmful and offensive sexual conduct and contact upon the person of Plaintiff in violation of New Jersey state law. Said conduct was undertaken while Sardoni was an employee, agent, representative, congregant and/or staff of Defendants, while in the course and scope of his duties with Defendants, and/or was ratified by Defendants.

95.     Prior to or during the abuse alleged above, Defendants knew, had reason to know, or were otherwise on notice of the unlawful sexual conduct of "Branch President" Sardoni.

20

Defendants failed to take reasonable steps and failed to implement reasonable safeguards to avoid acts of unlawful sexual conduct in the future by Sardoni, including, but not limited to, preventing or avoiding placement of Sardoni in functions or environments in which contact with children was an inherent part of those functions or environments. Furthermore, at no time during the periods of time alleged did Defendants have in place a system or procedure to supervise and/or monitor employees, volunteers, representatives or agents to ensure they did not molest or abuse minors in the care of the Defendants.

96.     Defendants' knowing acquiescence and silence with respect to the known or reasonably knowable activities of Sardoni constituted a course of conduct through which acts of sexual perversion and the violation of childhood innocence were condoned, approved, and effectively authorized.

97.     Through its failure to timely reprimand and sanction the acts referenced herein, and for all of the other reasons set forth in this Complaint including, without limitation, their failure to take the steps necessary to prevent the occurrence of such reprehensible acts, Defendants ratified said actions and, accordingly, are each vicariously liable for the actions of Sardoni.

WHEREFORE, Plaintiff, in his own right, demands judgment against Defendants jointly and severally with all other defendants and individually and collectively for damages, interest, cost of suit, punitive damages and such other remedies as this Honorable Court deems equitable, just and proper.

## COUNT III: GROSS NEGLIGENCE
### (As to all Defendants)

98.     Plaintiff incorporates all paragraphs of the Complaint as if fully set forth herein.

99.     Defendants owed Plaintiff a duty of reasonable care to protect Plaintiff from injury.

100.     Defendants acted and/or failed to act in such a manner as to create an unreasonable risk of harm to Plaintiff because of the Defendants' failure to exercise slight care or diligence.

21

101. Defendants' failure to exercise slight care or diligence was gross negligence.

102. Defendants failed to exercise a slight degree of care or diligence with thoughtless disregard and/or unconcern for the safety of Plaintiff.

103. The injury to Plaintiff was the natural and probable result of the Defendants' failure to exercise a slight degree of care or diligence and/or Defendants' indifference to Plaintiff's safety.

WHEREFORE, Plaintiff, in his own right, demands judgment against Defendants jointly and severally with all other defendants and individually and collectively for damages, interest, cost of suit, punitive damages and such other remedies as this Honorable Court deems equitable, just and proper.

## COUNT IV: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (As to all Defendants)

104. Plaintiff incorporates all paragraphs of the Complaint as if fully set forth herein.

105. Defendants' conduct was extreme and outrageous and was intentional and/or wanton and reckless with a conscious disregard for the rights and safety of Plaintiff and other children. Defendants knew or should have known the Sardoni was spending time, and would continue to spend time in the future, in the company of and assaulting numerous children, including Plaintiff, around the Soldier Hill Stake ward locations. Defendants also knew or should have known the Perpetrator was a high risk to all children, Defendants knew or should have known, and had the opportunity to learn of, the intentional and malicious conduct of Sardoni, and thereby ratified and joined in said conduct by failing to terminate, discharge, or at least discipline the Sardoni after learning of his propensities, and/or by failing to warn anyone of the Perpetrator's pedophilic and/or ephebophilic propensities, and/or by failing to prevent him from having contact with children. The conduct of Defendants in confirming, concealing and ratifying that conduct was done with knowledge that the emotional and physical distress of Plaintiff and other children

22

exposed to these men would thereby increase, and was done with a wanton and reckless disregard of the consequences to Plaintiff and other children in their custody and control.

106. As a result of Defendants' conduct, Plaintiff experienced and continues to experience severe emotional distress resulting in bodily harm.

WHEREFORE, Plaintiff, in his own right, demands judgment against Defendants jointly and severally with all other defendants and individually and collectively for damages, interest, cost of suit, punitive damages and such other remedies as this Honorable Court deems equitable, just and proper.

## COUNT V – NEGLIGENT TRAINING, SUPERVISION, AND RETENTION
### (As to All Defendants)

107. Plaintiff incorporates all paragraphs of the Complaint as if fully set forth herein.

108. Defendants had a duty not to hire and/or retain "Branch President" Sardoni given his dangerous and exploitive propensities.

109. Defendants, by and through their agents, servants and employees, knew or reasonably should have known of Sardoni's dangerous and exploitive propensities and/or that he was an unfit agent.

110. Despite such knowledge, Defendants negligently hired and/or retained the Perpetrator in the position of trust and authority as a "Branch President" and authority figure, where he was able to commit the wrongful acts against Plaintiff.

111. Defendants failed to use reasonable care in investigating Sardoni and his actions and failed to provide adequate warning to Plaintiff and other congregants of Sardoni's dangerous propensities and unfitness.

112. Defendants, through their conduct during and after the period of abuse, ratified "Branch President" Sardoni's sexual abuse of Plaintiff. Defendants' ratification of the Perpetrator's criminal conduct included repeatedly not disciplining or terminating him for his

23

sexual misconduct towards minors, including Plaintiff, after Sardoni was being criminally investigated for his contact.

113. Defendants' conduct alleged herein, and Defendants' implementation of their policy of secrecy in particular, illustrates wanton and reckless conduct and/or a conscious disregard for the rights and safety of Plaintiff and other children.

WHEREFORE, Plaintiff, in his own right, demands judgment against Defendants jointly and severally with all other defendants and individually and collectively for damages, interest, cost of suit, punitive damages and such other remedies as this Honorable Court deems equitable, just and proper.

### COUNT VI – VIOLATION OF N.J.S.A. § 9:6-8.10
### (As to All Defendants)

114. Plaintiff incorporates all paragraphs of the Complaint as if fully set forth herein.

115. N.J.S.A. § 9:6-8.10 states that "[a]ny person having reasonable cause to believe that a child has been subjected to child abuse or acts of child abuse shall report the same immediately to the Division of Child Protection and Permanency by telephone or otherwise."

116. Defendants violated N.J.S.A. § 9:6-8.10 by failing to report the sexual abuse of Plaintiff to the appropriate authorities upon discovering and/or suspecting the abuse.

117. As a direct and proximate result of Defendants' conduct described herein, Plaintiff was caused to suffer emotional and physical injuries, including but not limited to, depression, anxiety, embarrassment, and humiliation, and has incurred and will likely incur in the future, substantial expenses for medical and psychological treatment.

WHEREFORE, Plaintiff, in his own right, demands judgment against Defendants jointly and severally with all other defendants and individually and collectively for damages, interest, cost of suit, punitive damages and such other remedies as this Honorable Court deems equitable, just and proper.

## COUNT VII – PUNITIVE DAMAGES
### (As to All Defendants)

118.    Plaintiff incorporates the averments contained throughout this complaint as if each was set forth herein at length.

119.    For the reasons outlined herein, Defendants recklessly and/or intentionally demonstrated a wanton disregard for the safety of Plaintiff and as such, caused Plaintiff to suffer harm and losses as outlined herein for which claims of punitive damages is sought, as they knew or should have known of "Branch President" Sardoni's dangerous and exploitative propensities and/or ratified their conduct after the fact, as outlined in the averments and Counts of this Complaint.

120.    Defendants recklessly and/or intentionally demonstrated a wanton disregard for the safety of Plaintiff and as such, caused Plaintiff to suffer harm and losses and outlined herein for which claims of punitive damages is sought, as they knew or should have known of multiple instances in which Sardoni was targeting and sexually abusing Plaintiff.

121.    Defendants recklessly and/or intentionally demonstrated a wanton disregard for the safety of Plaintiff and as such, caused Plaintiff to suffer harm and losses outlined herein for which claims of punitive damages is sought, as they were aware of this foreseeable risk to Plaintiff yet did not have in place (or failed to enforce) adequate, reasonable, and necessary rules, regulations, policies, and procedures which could effectively identify and deal with sexual predators.

122.    As a direct and proximate result of Defendants' recklessness, and/or intentional conduct, described herein above, and its callous disregard for the safety of Plaintiff, Sardoni committed acts of sexual assault, sexual misconduct, and/or sexual harassment upon Plaintiff and have caused Plaintiff damages and injuries, as outlined in averments and Counts of this Complaint.

123.    In the alternative, ABC Inc. 1-10 (fictitious entities) and/or DOES. 1-10 (fictitious entities) are liable for damages caused to Plaintiffs for the reasons outlined throughout this count.

25

WHEREFORE, Plaintiff, in his own right, demands judgment against Defendants jointly and severally with all other defendants and individually and collectively for damages, interest, cost of suit, punitive damages and such other remedies as this Honorable Court deems equitable, just and proper.

## COUNT VIII – ASSAULT & BATTERY
### (As to Defendant Sardoni)

124. Plaintiff incorporates the averments contained throughout this complaint as if each was set forth herein at length.

125. Sardoni sexually assaulted Plaintiff for which a claim of assault is brought.

126. Sardoni performed sexual acts upon plaintiff, a minor, without his consent and in violation of N.J.S.A. § 9:6-1, et seq. and N.J.S.A. § 2C:24-4.

127. Sardoni unlawfully touched plaintiff for which a claim of battery is brought.

128. As a direct and proximate result of the defendant's conduct described herein, plaintiff was caused to suffer emotional and physical injuries, including but not limited to, depression, anxiety, embarrassment, and humiliation, and has incurred and will likely incur in the future, substantial expenses for medical and psychological treatment.

129. Additionally, and/or in the alternative, at the time and place aforesaid, defendants, ABC, Inc. 1-10 (fictitious entities), and/or defendants, John Doe 1-20 (fictitious names and/or fictitious entities), through their employees, servants, and/or agents acted negligently or recklessly for the reasons outlined above, and thereby caused plaintiff's injuries and damages.

WHEREFORE, Plaintiff, in his own right, demands judgment against Defendants jointly and severally with all other defendants and individually and collectively for damages, interest, cost of suit, punitive damages and such other remedies as this Honorable Court deems equitable, just and proper.

26

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues.

## DEMAND FOR COMPLIANCE
## WITH N.J. COURT RULES 1:5-1(a)
## AND 4:17-4(c)

**TAKE NOTICE** that the undersigned attorney, counsel for Plaintiff, hereby demands, pursuant to the provisions of R.1:5-1(a) and 4:17-4(c), that each party serving pleadings or interrogatories and receiving responses thereto shall serve copies of all such pleadings, interrogatories, and responses thereto upon the undersigned, and further **TAKE NOTICE** that this is a continuing demand.

## DESIGNATION OF TRIAL COUNSEL

Daniel Lapinski is hereby designated trial counsel for Plaintiff.

## DEMAND FOR DISCOVERY OF INSURANCE COVERAGE

Pursuant to New Jersey Court Rule 4:10-2(b) demand is made that Defendant(s) disclose to Plaintiff's attorney whether or not there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or indemnify or reimburse for payments made to satisfy the judgment and provide Plaintiff's attorney with true copies of those insurance agreements or policies, including, but not limited to, any and all declaration sheets. This demand shall include and cover not only primary coverage, but also any and all excess, catastrophe and umbrella policies.

## DEMAND FOR ANSWERS TO INTERROGATORIES

Demand is hereby made for fully responsive answers to Form C and Form C1 Interrogatories appearing in Appendix II to the Rules of Court.

27

## RULE 4:5-1 CERTIFICATION

I, Daniel Lapinski, of full age, do certify that I am the attorney for the plaintiff herein and that to my knowledge there are no other actions or arbitrations pending as a result of the incidents described in the foregoing Complaint.

**MOTLEY RICE NEW JERSEY LLC**

*/s/ Daniel R. Lapinski*

By: _____

Daniel R. Lapinski, Esq.
Attorney I.D. No. 004612001
Woodland Falls Corporate Center
210 Lake Drive East, Suite 101
Cherry Hill, NJ 08002
Tele: (856) 382-4670 Fax: (856) 667-5133

April 13, 2026

28

# Civil Case Information Statement

## Case Details: PASSAIC | Civil Part Docket# L-001331-26

**Case Caption:** DOE R.J. JOHN  VS THE CHURCH OF JESUS  CHRIST OF

**Case Initiation Date:** 04/14/2026

**Attorney Name:** DANIEL ROBERT LAPINSKI

**Firm Name:** MOTLEY RICE NEW JERSEY, LLC

**Address:** WOODLAND FALLS CORPORATE CTR 210 LAKE DRIVE EAST, STE 101

CHERRY HILL NJ 080021163

**Phone:** 8566670500

**Name of Party:** PLAINTIFF : John Doe R.J.

**Name of Defendant's Primary Insurance Company**

(if known): Unknown

**Case Type:** PERSONAL INJURY

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 12 JURORS

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19? NO**

**Are sexual abuse claims alleged by: John Doe R.J.? YES
Plaintiff's date of birth: 09/10/1984
Est. date of first incident of abuse: 09/01/1998**

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
   **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
   **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO
**Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

04/14/2026                                                          /s/ DANIEL ROBERT LAPINSKI
Dated                                                                 Signed

PASSAIC SUPERIOR COURT
PASSAIC COUNTY COURTHOUSE
77 HAMILTON STREET
PATERSON          NJ 07505
                                        TRACK ASSIGNMENT NOTICE
COURT TELEPHONE NO. (973) 653-2910
COURT HOURS  8:30 AM - 4:30 PM


                        DATE:   APRIL 14, 2026
                        RE:     DOE R.J. JOHN  VS THE CHURCH OF JESUS  CHRIST OF
                        DOCKET: PAS L -001331 26


     THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 2.

     DISCOVERY IS   300 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

     THE PRETRIAL JUDGE ASSIGNED IS:  HON DANIEL D. BARNES

      IF YOU HAVE ANY QUESTIONS, CONTACT TEAM     003
AT:  (973) 653-2910 EXT 24299.

     IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
     PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                        ATTENTION:
                                ATT: DANIEL R. LAPINSKI
                                MOTLEY RICE NEW JERSEY, LLC
                                WOODLAND FALLS CORPORATE CTR
                                210 LAKE DRIVE EAST, STE 101
                                CHERRY HILL      NJ 08002-1163


ECOURTS

**MOTLEY RICE NEW JERSEY LLC**
BY:    Daniel R. Lapinski, Esquire (Attorney ID: 004612001)
       dlapinski@motleyrice.com
       Alexandra A. Stulpin, Esquire (Attorney ID: 163562015)
       astulpin@motleyrice.com
       Jonathan Orent, Esquire (*pro hac vice forthcoming*)
       jorent@motleyrice.com
       Carmen Scott, Esquire (*pro hac vice forthcoming*)
       cscott@motleyrice.com
Woodland Falls Corporate Park
210 Lake Drive East, Suite 101
Cherry Hill, New Jersey 08002
Telephone: 856-382-4670
Facsimile: 856-667-5133
*Attorneys for Plaintiff*

| | |
|---|---|
| JOHN DOE R.J. (fictitious name),<br><br>Plaintiff,<br><br>v.<br><br>THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS; TEMPLE CORPORATION OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS; THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS SOLDIER HILL NEW JERSEY STAKE; LAWRENCE W. SARDONI, JR., ABC, INC. 1-10 (fictious entities); and DOES 1-10 (fictitious persons),<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: PASSAIC COUNTY<br>DOCKET NO.: PAS-L-1331-26<br><br><br>CIVIL ACTION<br><br>**NOTICE OF APPEARANCE** |

**TO: THE CLERK OF THE ABOVE-NAMED COURT**


**PLEASE TAKE NOTICE** that the undersigned hereby enters an appearance in the above-entitled action on behalf of Plaintiff, John Doe R.J.

1

 *Alexandra Stulpin, Esq.*
**MOTLEY RICE, LLC**
Alexandra Stulpin, Esq.
(Attorney I.D. No. 163562015)
1717 Arch Street
Suite 3610
Philadelphia, PA 19103
Telephone: 267-267-4742
Astulpin@motleyrice.com

Dated: May 4, 2026

NJ Passaic County Woodland Park Municipal Court

**John Doe R.J.**

Plaintiff/Petitioner

vs.

**The Church of Jesus Christ of Latter-Day Saints, Temple Corporation of The Church of Jesus Christ of Latter-Day Saints, The Church of Jesus Christ of Latter-Day Saints Soldier Hill New Jersey Stake, Lawrence W. Sardoni Jr., ABC Inc. 1-10, Does 1-10**

Defendant/Respondent

Case No.:   **PAS-L-1331-26**

AFFIDAVIT OF SERVICE OF
**COMPLAINT; SUMMONS; CIVIL CASE INFORMATION STATEMENT**

---

Received by **Levon Airapetian**, on the **14th day of April, 2026 at 11:02 PM** to be served upon **Lawrence W. Sardoni, Jr. at 10467 Ring Avenue, Rancho Cucamonga, San Bernardino County, CA 91737.**
On the **16th day of April, 2026 at 11:54 AM**, I, **Levon Airapetian, SERVED Lawrence W. Sardoni, Jr. at 10467 Ring Avenue, Rancho Cucamonga, San Bernardino County, CA 91737** in the manner indicated below:

**INDIVIDUAL SERVICE,** by personally delivering **1** copy(ies) of the above-listed documents to **Lawrence W. Sardoni, Jr..**

THE DESCRIPTION OF THE PERSON WITH WHOM THE COPY OF THIS PROCESS WAS LEFT IS AS FOLLOWS:
**I delivered the documents to Lawrence W. Sardoni, Jr. with identity confirmed by subject stating their name. The individual accepted service with direct delivery. The individual appeared to be a gray-haired white male contact over 65 years of age, 5'6"-5'8" tall and weighing 120-140 lbs with glasses.**

Service Fee Total: **$76.00**

Per 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

NAME: _____     2026054952     04.17.26
Levon Airapetian            Server ID #        Date

Notary Public: Subscribed and sworn before me on this _17_ day of _APRIL_ in the year of 20_26_ at _BURBANK CALIFORNIA_

Personally known to me _____ or ___✓___ identified by the following document:

Number/Reference: W2097950
Type: CA DL
Notary Public for State of: CALIFORNIA
Commission Expiration: 05-14-2027

Notary Public (Legal Signature)

ZAHEER AZAM
NOTARY PUBLIC · CALIFORNIA
COMMISSION # 2444544
LOS ANGELES COUNTY
My Comm. Exp. May 14, 2027

### SUPERIOR COURT OF NEW JERSEY, COUNTY OF PASSAIC

| | |
|---|---|
| **JOHN DOE R.J. (fictitious name)** | Case No.:        **PAS-L-001331-26** |
| Plaintiff/Petitioner | |
| vs. | |
| **THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS; TEMPLE CORPORATION OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS; THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS SOLDIER HILL NEW JERSEY STAKE; LAWRENCE W. SARDONI, JR.; ABC, INC. 1-10 (fictious entities); and DOES 1-10  (fictitious persons)** | **AFFIDAVIT OF SERVICE OF CIVIL ACTION SUMMONS; COMPLAINT AND JURY DEMAND; CIVIL CASE INFORMATION STATEMENT; TRACK ASSIGNMENT NOTICE** |
| Defendant/Respondent | |

Received by **Jeismar Rivero**, on the **19th day of May, 2026 at 8:37 AM** to be served upon **Church of Jesus Christ of Latter Day Saints c/o McConkie Law, DESIGNEE** at **50 East South Temple #400, Salt Lake City, Salt Lake County, UT 84150.**
On the **19th day of May, 2026 at 10:36 AM**, I, **Jeismar Rivero, SERVED Church of Jesus Christ of Latter Day Saints c/o McConkie Law, DESIGNEE** at **50 East South Temple #400, Salt Lake City, Salt Lake County, UT 84150** in the manner indicated below:

**CORPORATE SERVICE**, by personally delivering **1** copy(ies) of the above listed documents to the named Corporation, by serving **Brookelyn Frodshan**, on behalf of said Corporation.
THE DESCRIPTION OF THE PERSON WITH WHOM THE COPY OF THIS PROCESS WAS LEFT IS AS FOLLOWS:
**I delivered the documents to Brookelyn Frodshan who identified themselves as the person authorized to accept with identity confirmed by subject saying yes when named. The individual accepted service with direct delivery. The individual appeared to be a black-haired white female contact 18-25 years of age, under 5' tall and weighing 140-160 lbs with an accent.**

Service Fee Total: **$95.00**

Per 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

NAME: _____        N/A _____        05/19/26 _____
Jeismar Rivero                                    Server ID #                                Date

Notary Public:  Subscribed and sworn before me on this _____ day of _____ in the year of 20__ at _____.

Personally known to me _____ or _____ identified by the following document: _____

Number/Reference:_____
Type:_____
Notary Public for State of:_____
Commission Expiration:_____

_____
Notary Public (Legal Signature)

SUPERIOR COURT OF NEW JERSEY, COUNTY OF PASSAIC

| | |
|---|---|
| **JOHN DOE R.J. (fictitious name)** | Case No.:   **PAS-L-001331-26** |
| Plaintiff/Petitioner | |
| vs. | |
| **THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS; TEMPLE CORPORATION OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS; THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS SOLDIER HILL NEW JERSEY STAKE; LAWRENCE W. SARDONI, JR.; ABC, INC. 1-10 (fictious entities); and DOES 1-10 (fictitious persons)** | AFFIDAVIT OF SERVICE OF<br><br>CIVIL ACTION SUMMONS; COMPLAINT AND JURY DEMAND; CIVIL CASE INFORMATION STATEMENT; TRACK ASSIGNMENT NOTICE |
| Defendant/Respondent | |

Received by **Jeismar Rivero**, on the **19th day of May, 2026 at 8:36 AM** to be served upon **The Temple Corp of The Church of Jesus Christ of Latter-Day Saints c/o McConkie Law, DESIGNEE** at **50 East South Temple #400, Salt Lake City, Salt Lake County, UT 84150**.
On the **19th day of May, 2026 at 10:38 AM**, I, **Jeismar Rivero**, SERVED The Temple Corp of The Church of Jesus Christ of Latter-Day Saints c/o McConkie Law, DESIGNEE at **50 East South Temple #400, Salt Lake City, Salt Lake County, UT 84150** in the manner indicated below:

**CORPORATE SERVICE**, by personally delivering **1** copy(ies) of the above listed documents to the named Corporation, by serving **McConkie Law, DESIGNEE**, on behalf of said Corporation.
THE DESCRIPTION OF THE PERSON WITH WHOM THE COPY OF THIS PROCESS WAS LEFT IS AS FOLLOWS:
**I delivered the documents to McConkie Law, DESIGNEE with identity confirmed by brookelyn frodsham. The individual accepted service with direct delivery. The individual appeared to be a black-haired white female contact 18-25 years of age, 5'-5'4" tall and weighing 140-160 lbs with an accent.**

Service Fee Total: **$95.00**

Per 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

NAME: _____   N/A   05/19/26
　　　　Jeismar Rivero　　　　　　Server ID #　　　　Date

Notary Public: Subscribed and sworn before me on this _____ day of _____ in the year of 20__ at
_____.

Personally known to me _____ or _____ identified by the following document: _____

Number/Reference:_____
Type:_____
Notary Public for State of:_____
Commission Expiration:_____

_____
Notary Public (Legal Signature)

REF: **1035086.000**

Page 1 of 1   Tracking #: **0224023772**

**MOTLEY RICE NEW JERSEY LLC**
BY:   Daniel R. Lapinski, Esquire (Attorney ID: 004612001)
      dlapinski@motleyrice.com
      Alexandra A. Stulpin, Esquire (Attorney ID: 163562015)
      astulpin@motleyrice.com
      Jonathan Orent, Esquire (*pro hac vice forthcoming*)
      jorent@motleyrice.com
      Carmen Scott, Esquire (*pro hac vice forthcoming*)
      cscott@motleyrice.com
Woodland Falls Corporate Park
210 Lake Drive East, Suite 101
Cherry Hill, New Jersey 08002
Telephone: 856-382-4670
Facsimile: 856-667-5133
*Attorneys for Plaintiff*

| | |
|---|---|
| JOHN DOE R.J. (fictitious name),<br><br>        Plaintiff,<br><br>    v.<br><br>THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS; TEMPLE CORPORATION OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS; THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS SOLDIER HILL NEW JERSEY STAKE; LAWRENCE W. SARDONI, JR., ABC, INC. 1-10 (fictious entities); and DOES 1-10 (fictitious persons),<br><br>        Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: PASSAIC COUNTY<br>DOCKET NO.: PAS-L-1331-26<br><br>CIVIL ACTION<br><br>**NOTICE OF APPEARANCE** |

### TO: THE CLERK OF THE ABOVE-NAMED COURT

**PLEASE TAKE NOTICE** that the undersigned hereby enters an appearance in the above-entitled action on behalf of Plaintiff, John Doe R.J.

1

*/s/ Michael Daly, Esq.*  
**MOTLEY RICE LLC**  
Michael Daly, Esq.  
(Attorney I.D. No. 025812010)  
1717 Arch Street  
Suite 3610  
Philadelphia, PA 19103  
Telephone: 267-267-4742  
MDaly@motleyrice.com

Dated: June 10, 2026